CRESCENT PANEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10568.   Promulgated June 13, 1928.

*Harry Tincher, Esq.,* and *R. S. McGlasson, C. P. A.,* for the petitioner.

*Harry LeRoy Jones, Esq.,* for the respondent.

OPINION.

SIEFKIN: The sole question to be decided is whether, during the fiscal year ended June 30, 1920, the petitioner was entitled to include in its invested capital a value for 25 notes of $8,000 each, executed by 5 stockholders of petitioner on or about February 4, 1920, in favor of petitioner. These notes were antedated to May 26, 1919, the date of petitioner's organization.

However, the fact that the notes were antedated would not be sufficient to allow their inclusion in invested capital of petitioner during that part of the fiscal year before February 4, 1920, the date of the execution of the notes.

Section 326 (a) of the Revenue Act of 1918 provides:

That as used in this title the term "invested capital" for any year means (except as provided in subdivisions (b) and (c) of this section):

(1) Actual cash bona fide paid in for stock or shares;

(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: *Provided*, That the Commissioner shall keep a record of all cases in which tangible property is included in invested capital at a value in excess of the stock or shares issued therefor, containing the name and address of each taxpayer, the business in which engaged, the amount of invested capital and net income shown by the return, the value of the tangible property at the time paid in, the par value of the stock or shares specifically issued therefor, and the amount included under this paragraph as paid-in surplus. The Commissioner shall furnish a copy of such record and other detailed information with respect to such cases when required by resolution of either House of Congress, without regard to the restrictions contained in section 257;

(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year; * * *.

In the instant proceeding the notes were not paid in for stock or shares and the only provision of section 326 of the Revenue Act of 1918 which is applicable is subdivision (a) (3).

No consideration was paid by the corporation for the notes and there is no evidence that the intention of the stockholders was to make a voluntary contribution to the corporation, the evidence show-

ing that their intention was to provide security according to the request of the bank to which the petitioner was indebted. No part of the principal or interest of the notes was ever paid nor was any request made for such payment. The bank held the notes until the petitioner was self-supporting and then returned them to the petitioner and they were canceled.

In *Fox River Iron Co.*, 5 B. T. A. 810, a promissory note written by one of the principal stockholders in favor of the taxpayer corporation and carried in its safe from the date of organization in 1906 until February, 1916, was held not to have been a paid-in surplus for the purpose of prewar invested capital. It was not shown why the note was deposited with the corporation.

In *Ready Auto Supply Co.*, 2 B. T. A. 730, promissory notes executed by the owners of all the common stock of a corporation and by them paid in to it in satisfaction of a duly authorized assessment upon said stock, upon which no cash payments were ever made, and which were not discounted by the corporation but were canceled at maturity, the amount of each note being charged to the personal account of the maker, held not to have been bona fide paid in, either for the stock or on account of an assessment constituting a paid-in surplus. Another factor in determining this case was the financial standing of the makers of the notes.

In *Siems, Carey–H. S. Kerbaugh Corporation*, 5 B. T. A. 1109, a promissory note payable to the Secretary of War, executed by three owners of the corporation in their individual capacity, and securities individually owned or borrowed by such owners which notes and securities were turned over to the corporation, and by it put up as security for the repayment of an advance made to it by the United States in aid of the performance of a supply contract between the corporation and the United States and returned to said owners upon the termination of said supply contract, were held not to be part of the invested capital of the corporation.

In the instant proceeding, it was shown that the makers of the notes were financially able to meet the obligations of the notes, and that no collateral agreement was entered into which would relieve them from liability if the petitioner had failed, but the intention clearly shown, was that the notes were simply to be held as security for the payment of the bonded indebtedness and the petitioner's indebtedness to the bank. No payments of principal or interest were ever made, and as soon as the petitioner became self-supporting the bank returned the notes to the petitioner and they were canceled. We are of the opinion that the notes did not constitute invested capital.

*Judgment will be entered for the respondent.*